## In re BESPATOW.
### No. 2774.

United States District Court
W. D. Pennsylvania.
Sept. 24, 1951.

R. W. Gensler, of Department of Immigration and Naturalization, Pittsburgh, Pa., presented matter in Court.

No counsel for petitioner.

GOURLEY, Chief Judge.

This proceeding relates to a petition for naturalization filed by Wasil Bespatow on July 27, 1949. The question before the court is whether the petitioner has been and still is a person of good moral character within the meaning of section 307(a) of the Nationality Act of 1940, 8 U.S.C.A. § 707(a), so that he may be naturalized as a citizen of the United States.

Wasil Bespatow, a native and national of Russia, has resided continuously in the United States since his lawful entry for permanent residence on November 7, 1913. During this period he has never been involved in any trouble or difficulty with one exception. A True Bill was found in November Term 1942, Oyer and Terminer Court of Washington County, Pennsylvania, charging Bespatow with murder. On November 16, 1942, the Court allowed Bespatow to enter a plea of guilty of voluntary manslaughter and sentence was suspended, he being placed on probation commencing November 16, 1942 for a period of four years, and further being ordered to pay costs and a fine of $200. On January 15, 1947, the Court signed a discharge from probation, closing the case and discharging Bespatow from his probation.

Under the provisions of Section 307(a) of the Nationality Act of 1940, 8 U.S.C.A. § 707(a), the petitioner is required to establish, among other matters, good moral character for a period of at least five years prior to the filing of his petition for naturalization and until the date of final hearing. The petitioner's plea of guilty to the charge of voluntary manslaughter on November 16, 1942, occurred prior to the commencement of the statutory period. The commission of a crime before the commencement of the five year period is no bar to naturalization. Daddona v. United States, 2 Cir., 170 F.2d 964.

The fact that petitioner is convicted for a killing before filing his petition for naturalization does not preclude him from establishing good moral character for the statutory five year period preceding filing. Daddona v. United States, supra; Petition of Sperduti, D.C., 81 F.Supp. 833; In re Balestrieri, D.C., 59 F.Supp. 181.

Nor does the fact that petitioner was on probation as a result of conviction for a crime during part of the required statutory period, preceding filing of petition, preclude him from establishing good moral character during the statutory period so as to entitle him to naturalization. Petition of Sperduti, supra. Even proof of good behavior during incarceration for an offense committed before the five year period preceding the filing of naturalization petition is properly received as evidence of petitioner's good moral character. Daddona v. United States, supra.

The naturalization service recommends petitioner for citizenship solely on the ground that petitioner has behaved as a person of good moral character for five years prior to the filing of petition for naturalization.

Nevertheless, I am of the belief that the statute in no way imposes any time limitation upon judicial inquiry. I recognize naturalization to be a privilege and not a right, and the burden is on the petitioner to establish facts that entitle him to that privilege. "Good moral character" which an alien seeking naturalization must prove results from acts and conduct of an individual, and is of such a character as measures up to the standards of the community in which the alien resides. In re Mogus, D.C., 73 F.Supp. 150.

The phrase "good moral character" should concern the court not only with the technicalities of the law but also with the settled restrictions which exist in society and the way average men of good will act. In short, the ascertainment of the living law. Petition of R., D.C., 56 F.Supp. 969.

The court is satisfied that the facts relating to the killing in the instant case were these:

Bespatow, on October 6, 1942, returned to his home and found his wife in a compromising position with a Stanley Yakubczyk. Yakubczyk called him vile names in Polish, in view of which he struck him

with his fist. He then left the house and returned when his step-son informed him that something dreadful had happened. When he reached his home he learned that Yakubczyk was in a critical condition and appeared to be dying. The District Attorney called the court's attention to the fact that Bespatow had no previous record and bore a good reputation. He stated the reputation of Yakubczyk was not above reproach in that he had violated the liquor laws, was a heavy drinker, and when under the influence of liquor annoyed women. He also related that Bespatow married his wife regardless of the fact that she had five children by a former marriage, and that he properly supported her and the children.

The statute imposing the burden on an alien to establish good moral character five years immediately preceding his petition for naturalization should be liberally construed in cases which sanction forgiveness after the expiration of five years from the date of a disbarring deed. Petition of Zele, 2 Cir., 140 F.2d 773.

Naturally, I am compelled to act with considerable hesitation and great contemplation in bestowing the cherished privilege of United States citizenship upon one guilty of a killing. There are too many distraught and persecuted beings, of noble and impenetrable character scattered over the world, hoping and yearning for such a rare privilege.

But, upon examination of petitioner's favorable background of thirty-seven years in this country, and in view of the mitigating circumstances surrounding the one crime which he had committed during this period, I am of the belief that petitioner does now deserve citizenship.

In view of all the facts and circumstances, I have concluded that the petitioner should be admitted to citizenship.

In order that this decision will not be misinterpreted in the future, it should be understood that this court holds to the view that a killing, without mitigating circumstances, would constitute such moral turpitude as, in itself, to be sufficient reason to deny citizenship. It is only because of

the exceptional motivations to the instant killing that I see fit to grant the applicant's request.

An appropriate order will be filed.